UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

Overseas Direct Import Co., Ltd.,

                Plaintiff,

      - against -              10 Civ. 4919 (JGK)

Family Dollar Stores Inc., and
Prestige Global Co., Ltd.,         <u>MEMORANDUM OPINION AND</u>
                                 <u>ORDER</u>

                Defendants.

————————————————————————————

JOHN G. KOELTL, District Judge:

     This is a case primarily about alleged infringements of trademarks and copyrights in the packaging for men's thermal underwear.  The plaintiff, Overseas Direct Import Co., Ltd. ("ODI"), brought this lawsuit against the defendants, Family Dollar Stores Inc. ("FDS") and Prestige Global Co., Ltd. ("Prestige").  The plaintiff alleges primarily that the defendants have infringed the plaintiff's intellectual property rights in certain marks and artwork for packaging for men's thermal underwear.  FDS has filed a counterclaim for breach of contract in which it contends that ODI failed to pay for certain duties assessed by United States Customs ("Customs") that FDS was obligated to assume.  The defendants now move for partial summary judgment.

## I.

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify the material facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

If the moving party meets its burden, the burden shifts to the nonmoving party to bring forward "specific facts showing a genuine issue for trial."  Ovesen v. Mitsubishi Heavy Indus. of Am., Inc., No. 04 Civ. 2849, 2012 WL 677953, at *1 (S.D.N.Y. Mar. 1, 2012) (citation omitted).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Ovesen, 2012 WL 677953, at *1; see also Pelayo v. Port Auth., No. 09 Civ. 8879 (JGK), 2012 WL 4460798, at *1-2 (S.D.N.Y. Sept. 27, 2012).

## II.

The following facts are undisputed unless otherwise noted.

**A.**

The defendant, FDS, operates retail stores that sell, among other items, men's thermal underwear.  (Defs.' Rule 56.1 Statement ("56.1 Stmt.") ¶ 1.)  The plaintiff, ODI, operates a business that merchandises products for other companies.  (Lewis Decl., Ex. E ("M. Kassin Dep.") at 15-17.)  FDS began purchasing packages of men's thermal underwear from ODI in or about 1996.  (56.1 Stmt. ¶ 4.)  Between 2004 and 2010, several vendors supplied FDS with packages of men's thermal underwear, including ODI and Prestige.  (56.1 Stmt. ¶ 3.)  In 2008, FDS ceased using ODI as a vendor.  (56.1 Stmt. ¶ 16; M. Kassin Dep. at 152.)

**B.**

The gravamen of ODI's primary claims is that FDS and Prestige violated ODI's intellectual property rights in packaging for men's thermal underwear.  ODI claims that its "package always contained ODI's trademarks, trade dress, and copyrightable subject matter."  (Pl.'s Counterstatement to Defs.' Rule 56.1 Statement of Material Facts ("Counterstmt.") ¶ 5.)

In 2003, ODI changed the mark on its thermal underwear packages from "Rugged Territory" to "Rugged Wilderness," and updated the "Trees Design" on its men's thermal underwear packages.  (56.1 Stmt. ¶¶ 6-7; M. Kassin Dep. at 35.)  ODI

4

claims that it continues to use the "Rugged Territory" mark on packages sold to other customers. (Counterstmt. ¶ 8; see Kassin Decl. ¶ 5.) However, in his deposition, Michael Kassin admitted that ODI ceased offering "Rugged Territory" packaging once ODI switched to "Rugged Wilderness" packaging. (M. Kassin Dep. at 38, 75.) In 2003, FDS ceased using the "Rugged Territory" mark on the packages of men's thermal underwear sold in its stores. (56.1 Stmt. ¶ 19.)

### C.

In December 2002, ODI filed a trademark application for "Rugged Wilderness." (56.1 Stmt. ¶ 14; Lewis Decl., Ex. J.; M. Kassin Dep. at 31.) In 2003, counsel prosecuting ODI's trademark application for "Rugged Wilderness" informed Michael Kassin of ODI that the Patent and Trademark Office had issued a Notice of Allowance for "Rugged Wilderness" and required submission of a "Statement of Use" with a filing fee and specimen of the trademarked product for final approval. (Lewis Decl., Ex. S.) The trademark for "Rugged Wilderness" issued in 2005. (56.1 Stmt. ¶ 15; M. Kassin Dep. at 31.)

The defendants contend that FDS ceased using the "Rugged Wilderness" mark in 2007. (56.1 Stmt. ¶ 20.) There is evidence that in 2007 FDS began displaying the "Highland Outfitters" mark on its men's thermal underwear packages. (M. Kassin Dep. at 68;

Kassin Decl., Ex. J at FD 001813.)  Mr. Dromms of FDS testified

that when he began working at FDS the men's thermal underwear

packages bore the name, "Rugged Wilderness," and when he left

FDS the packages bore the name, "Highland Outfitters."  (Lewis

Decl., Ex. B ("Dromms Dep.") at 29.)

On April 30, 2010, ODI filed applications seeking to

register copyrights for the "Tree Design for Rugged Territory,"

and "Tree Design for Rugged Wilderness," ("Tree Designs")

listing ODI as the author of all rights in the works.  (56.1

Stmt. ¶¶ 54, 55.)  Although ODI denies that the "Tree Design for

Rugged Wilderness," was identified as a "work made for hire,"

the copyright registration form plainly identifies it as a "work

made for hire."  (Lewis Decl., Ex. K.)

Noel Foronda created the Tree Designs for ODI and executed

an assignment August 28, 2012 that states as follows:

> ODI instructed the Artist to make a drawing of the
> artworks and package designs entitled "Tree Design for
> Rugged Territory," and "Tree Design for Rugged
> Wilderness . . . which are original Works of Art.
> . . . [T]he Works were specifically commissioned by
> ODI, and drawn by the Artist for ODI, pursuant to
> specific instructions given to the Artist by ODI on
> precisely how and in what manner to draw the scenes
> and artwork in the Works . . .  [T]his Assignment
> confirms the agreements made between the Artist and
> ODI in 1996 and 2003 to transfer ownership of the
> above copyrights in the art works and package designs
> identified above from the Artist to ODI, and further
> confirms that ODI was authorized to register the
> copyrights in ODI's name, and further confirms that
> ODI was authorized to file claims to enforce the
> copyrights, and further confirms that the Artist did

6

> sell, assign, and transfer to ODI all ownership
> rights, title and interest in and to the Works at the
> time they were created by the Artist; and to
> copyrights for said Works; and the right to sue for
> past, present, and future infringement of said Works;
> and WHEREAS payment was made from ODI to the Artist at
> the time the Works were created by the Artist, at
> which time all ownership rights were transferred to
> ODI.

(Kassin Decl., Ex. B ("Foronda Assignment").) ODI denies that

Mr. Foronda was not an employee of ODI and denies that he was an

independent contractor. (Counterstmt. ¶¶ 58-59). However,

Michael Kassin testified in his deposition that Mr. Foronda "was

a freelance designer . . . [h]e was never a direct employee of

ODI," and testified that ODI and Mr. Foronda collaborated on the

name, "Rugged Wilderness." (M. Kassin Dep. at 35.) Mr. Kassin

further testified that aside from the Foronda Assignment there

was no document, contract, or other agreement signed by Mr.

Foronda and ODI when the works were created assigning to ODI the

rights to the "Rugged Territory" and "Rugged Wilderness" marks

and Tree Designs. (M. Kassin Dep. at 100.) Mr. Kassin

testified that in 1996, when Mr. Foronda completed the works

there was "an unspoken understanding about the prior agreements

without any specific discussion of the terms." (Supp. Lewis

Decl., Ex. X ("Kassin Dep. II") at 23, 33.) Mr. Kassin also

testified that it was assumed that ownership of the works would

transfer on payment. (Kassin Dep. II at 34.)

D.

Prestige and FDS have had a business relationship since the 1980s. (56.1 Stmt. ¶ 10.)  In 2005, FDS began purchasing men's thermal underwear from Prestige. (56.1. Stmt. ¶ 10.)  By 2006, FDS was splitting its men's thermal underwear supply "[p]retty close to 50/50" between Prestige and ODI. (Dromms Dep. at 18.) This split continued until 2008. (56.1 Stmt. ¶ 40.)  Mr. Dromms of FDS testified that FDS used more than one vendor to supply its men's thermal underwear line because

> [Men's thermal underwear is a] [h]uge commodity business for [FDS], and the liability that would have involved for [FDS] . . . to have the proverbial all the eggs in one basket would have been challenging . . . if a program like this disappeared, if a factory had shuttered down, if a factory had flooded, if there was a fire, any of those type of things you tend to hear in this business, we would have had a season that would have been lost.

(Dromms Dep. at 18-19.)

Michael Kassin of ODI testified that ODI did not know that FDS used another supplier of men's thermal underwear besides ODI. (56.1 Stmt. ¶ 41; M. Kassin Dep. at 133-34.)  However, Mr. Dromms testified that FDS sent ODI a package of men's thermal underwear in an effort to match ODI's packaging to Prestige's packaging as part of a "consistency focus" that began in 2006. (Dromms Dep. at 38-39.)  E-mails between David Kassin of ODI and Amber Mills of FDS reference an "other vendor who is also doing [the] program," and, as part of an effort to ensure consistency

between suppliers, compares the sizes of the other vendor's men's thermal underwear to that provided by ODI. (Lewis Decl., Ex. P at FD 0001804.) E-mails between David Kassin and Mr. Dromms of FDS demonstrate that FDS compared ODI's price quotes for men's thermal underwear to those of the "other supplier." (Lewis Decl., Ex. Q at FD 0003005.) Mr. Dromms testified in his deposition that ODI and FDS discussed ODI's prices relative to that of another supplier. (Dromms Dep. at 22-23.)

ODI contends that in 2005 FDS began purchasing from Prestige copies of ODI's packages of men's thermal underwear bearing ODI's trademarks, trade dress, and copyrightable material. (Counterstmt. ¶ 10.) The parties agree that FDS instructed Prestige regarding what marks and designs to place on the packages of men's thermal underwear that Prestige produced for FDS. (Counterstmt. ¶ 11.) Mr. Jacobs of Prestige testified that FDS gave it "product to copy." (Kassin Decl., Ex. H ("Jacobs Dep.") at 77-78.) Mr. Jacobs further testified that, as a matter of course, Prestige did not "do any checking into" whether it was copying a design that it should not be copying, unless there is a "recognizable copyright issue, such as a Nike swish." (Jacobs Dep. at 78.) He testified that FDS retained final approval of Prestige's packaging designs. (Jacobs Dep. at 79.)

The defendants claim that the products Prestige supplied to ODI did not contain the "Rugged Territory" or "Rugged Wilderness" trademarks, but instead contained the FDS mark "Highland Outfitters," as demonstrated by the images of the packages Prestige provided to FDS. (56.1 Stmt. ¶ 12; see Lewis Decl., Exs. T & U.) ODI denies this and states that "[b]etween 2003 and 2007, ODI's package, and the package copied by Prestige, had the trademark RUGGED WILDERNESS." (Counterstmt. ¶ 12 (citing Kassin Decl. ¶ 3).) However, the only evidence it offers in support of this claim is the Declaration of Michael Kassin stating that FDS "was duplicating ODI's packaging, including the trademark 'RUGGED WILDERNESS,' during 2003 to 2008 through other vendors [including] . . . Prestige Global from 2005 to 2008." (Kassin Decl. ¶ 3.) In his deposition, Mr. Kassin testified that the only basis for his assertion that Prestige infringed on ODI's intellectual property rights is a single package that ODI's investigator picked up from an FDS store, which bore the name "Highland Outfitters." (M. Kassin Dep. at 198-99.)

It is undisputed that the Prestige packages contained the second "Trees Design." (Counterstmt. ¶ 13.) However, there are no packages, photographic evidence, or any statements from Prestige or FDS that indicate that Prestige ever used the "Rugged Territory" or "Rugged Wilderness" trademarks. ODI does

not dispute that it never notified Prestige of its "Rugged Wilderness" trademark registration, and that no other evidence suggests that Prestige had actual knowledge of ODI's trademark. (Counterstmt. ¶¶ 37-38.)

In 2008, FDS ceased using ODI as a vendor due to the price of its men's thermal underwear and the conflict relating to improperly assessed Customs duties, which is the basis for its counterclaim. (56.1 Stmt. ¶ 53; Counterstmt. ¶ 53; see also Dromms Dep. at 137-39.)

**E.**

FDS claims that ODI owes $51,473.42 for improperly assessed tariffs for which ODI is responsible. As part of its business, FDS imports certain goods from a Qualifying Industrial Zone ("QIZ") in Egypt. (56.1 Stmt. ¶ 63.) FDS claims that between 2006 and 2007 Customs improperly assessed a tariff totaling $384,914.28 on goods shipped by ODI that originated from the QIZ. (56.1 Stmt. ¶ 67.) ODI contends that the improperly assessed tariff totaled $404,655.64 and that Customs assessed that tariff due to a mistake by FedEx Trade Services ("FedEx"), which allegedly failed to check the QIZ box on the tariff form. (Counterstmt. ¶ 67.)

An e-mail from Eric Sherman of FDS states that:

In late 2006 and early 2007, FedEx incorrectly filed 15 Egypt QIZ entries with US Customs resulting in just under $400k in duties being paid out by FDS.   FDS clearly provided all the proper documentation and notice to FedEx yet they failed to flag the proper field to show that these entries were duty free under the US QIZ agreement with Egypt.   After much discussion, FedEx advanced [FDS] those paid duties with the understanding that upon receipt of refunds from US Customs, FDS would reimburse them in the amount of the duties paid.

To date, we have received refunds from Customs and refunded FedEx $252,962.01 in duties.  The balance of $131,951.27 is either pending protest approval/denial at US Customs or is pending reimbursement from the Factory/Vendor ODI.

We have also approached the vendor ODI to try to speed up the compensation process.  As you can see from the below emails to ODI, it has also been made very clear by me and the Buyer that they need to wire us the funds to resolve this issue.

(Lewis Decl., Ex. V at FD 0002975 (first alteration in original).)

An "Agent/Vendor Responsibility Statement" form ("AVRS") governs the importation of goods from the QIZ and provides, in part, as follows:

I the undersigned Buying Agent or Vendor, hereby certify the apparel items shipped to [FDS] under the Purchase Order numbers/styles listed below are wholly the production of a [QIZ] . . .  Further, I agree to . . . [r]eimbursement of applicable duties, expenses, etc. resulting from Customs examination resulting in a nondesignation as a [QIZ].

(Lewis Decl., Ex. V at FD 0002444.)

Documents in the record indicate that "Customs had a problem from the very beginning with the document quality, in

12

fact they . . . request[ed] additional and legible documentation
[from FDS]." (Lewis Decl., Ex. V at FD 0001610.) As a result
of these problems with documentation, Customs did not recognize
the imported goods at issue as coming from a QIZ and assessed a
tariff against FDS. (Lewis Decl., Ex. V at FD 0001610.) When
confronted by FDS about these problems, Michael Kassin replied
that ODI "covered satisfactorily" with the factory the items on
the checklist that FDS provided regarding the documentation
Customs would require. (Lewis Decl., Ex. V at FD 0001610; see
also Lewis Decl., Ex. V at FD 0002417.) Prior to this lawsuit,
FDS claimed that ODI was responsible for the balance of
$51,473.42 owed to FDS for the improperly assessed tariff and
now seeks to recover this amount. (Lewis Decl., Ex. V at FD
0002420; see 56.1 Stmt. ¶¶ 65, 71-72.)

The parties dispute whether ODI or the factory signed the
AVRS. (See 56.1 Stmt. ¶ 64; Counterstmt. ¶ 64; see also Kassin
Decl., Ex. J at FD 0003624.) An e-mail from Marcia Kissel of
FDS states that the AVRS, "was signed by the factory [therefore]
[FDS] hold[s] them responsible for any duties incurred. . . ."
(Kassin Decl., Ex. J at FD 0003624.) However, subsequent e-
mails to ODI employees state that FDS "need[s] either ODI or the
factory to wire [FDS] **ALL** of these funds immediately." (Lewis
Decl., Ex. V at FD 0002418.)

ODI's position is that the factory is responsible for any improperly assessed tariff.  This is consistent with an e-mail from Michael Kassin stating that ODI was "very clear years back that the requested QIZ responsibility forms were not going to come from us, but only from the factory."  (Lewis Decl., Ex. V at FD 0002417.)

The parties do not dispute that FedEx's failure to check the QIZ box in the Customs form resulted in the improper assessment of the tariff.  (See 56.1 Stmt. ¶¶ 67-68; Counterstmt. ¶¶ 67-68.)  An August 9, 2007 letter from FDS to FedEx reveals that FedEx, "agreed to make [FDS] whole for $404,655.64 in excess duty payments by [FDS] to U.S. Customs as a result of an error attributable to FedEx.  As a condition of this arrangement, [FDS] hereby agrees to remit to FedEx monies refunded to [FDS] by U.S. Customs. . . ."  (Kassin Decl., Ex. J at FD 0002982.)  An e-mail from Eric Sherman of FDS to Michael Kassin states that if FDS does not repay FedEx immediately, "[l]awyers will be involved and . . . based on the reimbursement statements . . . [FDS] will in turn, come after ODI."  (Lewis Decl., Ex. V at FD 0002976.)

Ultimately, Customs refunded to FDS all but $51,473.42 of the improperly assessed tariff because Customs rejected the documentation that ODI and the factory supplied with regard to the outstanding amount.  (56.1 Stmt. ¶¶ 71-72.)  ODI maintains

14

that it provided all the documents necessary to correct the
error by FedEx, but that FDS improperly submitted the
documentation to Customs.  (Counterstmt. ¶ 71; Kassin Decl.
¶ 8.)  ODI does not identify the documents that FDS allegedly
improperly submitted to Customs.  In turn, FDS claims that ODI
supplied faulty documentation resulting in Customs declining to
refund $51,473.42.  (56.1 Stmt. ¶ 72.)  FDS similarly does not
point to faulty documentation submitted by ODI.

ODI represents that FedEx refused to file the remaining
protest, which resulted in the denial of a refund for the
remaining $51,473.42.  (Counterstmt. ¶ 72; see Kassin Decl., Ex.
J at FD 0002975.)  An e-mail from Eric Sherman of FDS states
that "due to questions raised by US Customs on one of the
protests, [FDS's] position is compromised and [FedEx] will no
longer take any further actions on [FDS's] behalf [including]
filing the last remaining protests.  (FDS processed those in
house and sent [them] to US Customs directly.)"  (Kassin Decl.,
Ex. J at FD 0002975.)  FDS repeatedly sought repayment of the
$51,473.42 from ODI.  (See, e.g., Lewis Decl., Ex. V at FD
0002420-21, FD 0002976, FD 0002979-80.)

**F.**

In the Second Amended Complaint (the "SAC"), ODI alleged:
Count One, trademark infringement under 15 U.S.C. § 1114(1);

Count Two, false designation of origin and trade dress infringement under 15 U.S.C. § 1125(a)(1); Count Three, trademark counterfeiting under 15 U.S.C. § 1114(1); Count Four, copyright infringement under the Copyright Act; Count Five, unfair competition under New York law; Count Six, misrepresentation and fraudulent inducement under New York law; Count Seven, breach of the implied covenant of good faith and fair dealing under New York law; and Count Eight, tortious interference with prospective economic advantage of ODI by Prestige Global in violation of New York law.  (SAC ¶¶ 50-139.) ODI sought a permanent injunction prohibiting further copyright infringement as well as compensatory damages, punitive damages, interest, attorney's fees and costs, and any further relief that is just and equitable.  (SAC at 19-20.)

The defendants filed an answer to the SAC and a counterclaim for breach of contract against ODI.  (Counterclaim ¶¶ 8-14.)  The defendants sought compensatory damages of no less than $51,473.42 on the counterclaim as well as attorney's fees and costs and any other relief that is just and proper. (Counterclaim at 39.)

In March 2011, the Defendants filed a motion to dismiss in part.  On December 6, 2011, this Court granted that motion in part and denied it in part.  The Court dismissed Count Six, the claim for fraudulent misrepresentation and inducement under New

16

York law, and Count Seven, the claim for breach of the implied covenant of good faith and fair dealing.  The Court also dismissed any claims for potential damages based on copyright infringement that occurred before June 24, 2007, any claims for attorney's fees stemming from the defendants' alleged copyright infringement, and any claims for copyright infringement based on the back of the packaging at issue.  The Court denied the motion to dismiss with respect to Count Eight, the claim for tortious interference with prospective economic advantage, and denied the motion to dismiss with respect to any injunctive relief.

## III.

The defendants now move for summary judgment on the claims for trademark infringement under 15 U.S.C. § 1114(1); trademark counterfeiting under 15 U.S.C. § 1114(1); copyright infringement under the Copyright Act; unfair competition; and tortious interference by Prestige.  The defendants also seek summary judgment on any claims for damages in connection with the trademark infringement and counterfeiting claims and any claims relating to "Rugged Territory", and on FDS's breach of contract counterclaim.

**A.**

The defendants have moved for summary judgment dismissing Counts One and Three of the SAC, namely the plaintiff's claims for trademark infringement and trademark counterfeiting in violation of 15 U.S.C. § 1114(1).  The plaintiff claims that the defendants violated the Lanham Act protecting registered trademarks when FDS instructed Prestige to create packaging bearing the mark "Rugged Wilderness," and when Prestige created packaging that bore the mark "Rugged Wilderness."  (See SAC ¶¶ 50-58, 66-77.)  The defendants are entitled to summary judgment dismissing these claims because the plaintiff has failed to offer evidence demonstrating that the men's thermal underwear packaging produced by Prestige and sold by FDS bore the "Rugged Wilderness" mark.

Section 32(1) of the Lanham Act provides protection against the use in commerce of a "reproduction, counterfeit, copy, or colorable imitation of a registered mark" and its application to "labels, signs, prints, packages, wrappers, receptacles or advertisements" where "such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1); see Cache, Inc. v. M.Z. Berger & Co., No. 99 CIV. 12320 (JGK), 2001 WL 38283, at *3 (S.D.N.Y. Jan. 16, 2001); see also Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999).

To establish a claim for trademark infringement or counterfeiting, the plaintiff must demonstrate (1) that "the plaintiff's mark is entitled to protection," and (2) that the "defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (quoting Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)); see also Sports Auth. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996). Accordingly, the plaintiff must also demonstrate that the defendants actually reproduced the registered trademark to survive a motion for summary judgment.

There is insufficient evidence in the record from which a reasonable jury could conclude that Prestige reproduced the plaintiff's "Rugged Wilderness" trademark. The defendants have offered evidence establishing that the packaging of men's thermal underwear that Prestige produced for FDS bore the mark "Highland Outfitters," not any registered trademark of ODI. (See 56.1. Stmt. ¶ 12; Lewis Decl., Exs. T & U; M. Kassin Dep. at 68; Kassin Decl., Ex. J at FD 0001813; Dromms Dep. at 29.) The only support for ODI's claim that the Prestige packaging bore the "Rugged Wilderness" trademark is an unsupported assertion that "[b]etween 2003 and 2007, ODI's package, and the package copied by Prestige, had the trademark RUGGED

WILDERNESS."[1]   (Counterstmt. ¶ 12).   Although there is some
evidence that establishes that Prestige copied the Tree Designs
of ODI's men's thermal underwear packaging, there is no evidence
that Prestige copied the "Rugged Wilderness" trademark.
Moreover, the only package that ODI's investigator picked up
from an FDS store bore the name "Highland Outfitters."   (M.
Kassin Dep. at 198-99.)   This is consistent with the
representation that FDS began using the "Highland Outfitters"
mark to update the look of its packaging.   (See Kassin Decl.,
Ex. J at FD 001813.)

     To the extent that ODI alleges that the men's thermal
underwear sold by FDS and produced by another vendor copied the
"Rugged Wilderness" mark there is also no evidence to support
that claim.   The only evidence regarding other men's thermal
underwear producers, for example, AAA, demonstrates that the
packages bore the name "Highland Outfitters."   (Lewis Decl., Ex.
A at 90.)

-------------------------------------

[1] This statement is allegedly supported by an affidavit from Tom
Batz.   (See Kassin Decl., Ex. D.)   But, that affidavit
establishes only that at some point FDS sold ODI-packaged
thermal underwear that contained the "Rugged Territory" and
"Rugged Wilderness" marks.   It does not state that FDS sold
products from any other producers bearing such marks.   The
statement also relies on the unsupported statement by Mr. Kassin
of ODI that FDS duplicated ODI's packaging including its
trademark "Rugged Wilderness."   There is no evidence supporting
that statement.

Because the plaintiff's claims for infringement and counterfeiting of the "Rugged Wilderness" mark do not survive a motion for summary judgment because of the lack of evidence that the defendants reproduced the "Rugged Wilderness" mark, it is not necessary to reach the defendants' argument that the plaintiff is not entitled to damages on this claim.

Accordingly, the defendants' motion for summary judgment dismissing Counts One and Three of the SAC, the claims relating to infringement and counterfeiting of the "Rugged Wilderness" mark, is **granted.**[2]

### B.

The defendants seek summary judgment dismissing so much of Count Two of the SAC as it relies on the use of the "Rugged Territory" mark.  FDS claims that ODI abandoned the "Rugged Territory" mark.  Count Two of the SAC charges the defendants with false designation of origin and trade dress infringement based on the use of the "Rugged Wilderness," "Rugged Territory," and "Tree Logo," as well as the copying of artwork, other design elements, and ODI's trade dress for packaging men's thermal underwear.  (SAC ¶¶ 59-65.)

---

[2] Similarly, so much of Count Two, relating to false designation of origin in violation of 15 U.S.C. § 1125(a)(1) must be dismissed to the extent it is based on the defendants' use of the "Rugged Wilderness" mark.

Abandonment requires (i) "non-use of the name by the legal owner" and (ii) "no intent . . . to resume use in the reasonably foreseeable future." Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850 (2d Cir. 1992) (citing Silverman v. CBS Inc., 870 F.2d 40, 45 (2d Cir. 1989)); see 15 U.S.C. § 1127; see also ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 146-49 (2d Cir. 2007). Under the Lanham Act, "[n]onuse [of a trademark] for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127; see ITC Ltd., 482 F.3d at 147-48. The plaintiff may rebut the presumption of abandonment by demonstrating (i) "an intention to resume use within the reasonably foreseeable future," ITC Ltd., 482 F.3d at 148 (internal quotation marks and citation omitted); (ii) use of the trademark; or (iii) "los[s] to another economic actor more willing to promote the mark in commerce." See Stetson, 955 F.2d at 851 (citing 15 U.S.C. § 1127).

The evidence in the record demonstrates that the plaintiff has not used the "Rugged Territory" mark for well over three years. ODI points to undated photographs of a men's thermal underwear package bearing the name "Rugged Territory" as evidence of its continued use of the mark. (See Kassin Decl., Ex. G.) However, these undated photographs do not prove continued use. Michael Kassin admitted in his deposition that although ODI once used the "Rugged Territory" mark on its men's

thermal underwear packaging, it stopped using the "Rugged Territory" mark in 2003 when it switched to the "Rugged Wilderness" mark.  (M. Kassin Dep. at 38, 75.)

Although the plaintiff contends that it continued to use the "Rugged Territory" mark on packaging sold to other customers, there is no evidence in the record to support this claim other than the unsubstantiated declaration of Michael Kassin.  (See Counterstmt. ¶ 8; Kassin Decl. ¶ 5.)  The statements of continued use in the declaration and in the plaintiff's Rule 56.1 Counterstatement are inconsistent with Mr. Kassin's deposition testimony.  "It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."  Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) (quoting Miller v. Int'l Tel. & Tel. Corp. 755 F.2d 20, 24 (2d Cir. 1985)); see also Mack, 814 F.2d at 124-25 (collecting cases).  Accordingly, Mr. Kassin's deposition testimony is controlling.

The evidence in the record demonstrates that the plaintiff has not used the "Rugged Territory" mark since 2003.  Therefore, the defendants have established a presumption of abandonment. See Stetson, 955 F.2d at 850 (quoting Silverman, 870 F.2d at 45).  That pattern of non-use is sufficient to demonstrate intent to abandon the mark.  See Hermès Int'l v. Lederer de

23

<u>Paris Fifth Ave., Inc.</u>, 219 F.3d 104, 110 (2d Cir. 2000).  The plaintiff has not rebutted this presumption by offering evidence of use, intent to use the trademark, or loss to another entity willing to promote the mark in commerce.  See <u>ITC Ltd.</u>, 482 F.3d at 148; <u>Stetson</u>, 955 F.2d at 850.

Therefore, the motion for summary judgment dismissing so much of Count Two as depends on the use of "Rugged Territory" mark is **granted.**

### C.

The defendants have moved for summary judgment dismissing Count Four, the plaintiff's claim for copyright infringement regarding the Tree Designs, on the grounds that the plaintiff lacks standing under the Copyright Act because ODI is not the author of the Tree Designs and that ODI holds an invalid assignment.

### i.

The defendants argue that the plaintiff cannot bring a claim for copyright infringement because it is not the author of the Tree Designs.  The Copyright Act provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of

it," 17 U.S.C. § 501(b), and permits the transfer of ownership
by the author of a work if "an instrument of conveyance, or a
note or memorandum of the transfer is in writing and signed by
the owner of the rights conveyed," 17 U.S.C. § 204.  The writing
serving as evidence of the conveyance "need not be made at the
time when the license is initiated; the requirement is satisfied
by the copyright owner's later execution of a writing which
confirms the agreement."  Eden Toys, Inc. v. Florelee
Undergarment Co., Inc., 697 F.2d 27, 32 n.3, 27 (2d Cir. 1982),
overruled on other grounds by Weissmann v. Freeman, 868 F.2d
1313 (2d Cir. 1989); see also Barefoot Architect, Inc. v. Bunge,
632 F.3d 822, 833 & n.4 (3d Cir. 2011) (finding that an alleged
infringer could challenge the validity of the copyright at issue
when "none of the proffered evidence . . . would permit a jury
to conclude that an oral transfer took place" and noting that as
Eden Toys suggested, "it is likely possible for a copyright
transfer to be implied from conduct and then later validated in
writing"); Davis v. Blige, 505 F.3d 90, 101 (2d Cir. 2007).

     The defendants point out that the Second Circuit Court of
Appeals has limited standing under the Copyright Act to "(1)
owners of copyrights, and (2) persons who have been granted
exclusive licenses by owners of copyrights." Eden Toys, 697 F.2d
at 32 & n.3 (holding that the Copyright Act did not authorize
authors of works to deputize third parties to bring claims to

enforce a copyright).  However, the Court of Appeals has held
that where, "the copyright holder appears to have no dispute
with its licensee on th[e] matter [of validity of the transfer
of ownership under § 204 of the Copyright Act], it would be
anomalous to permit a third party infringer to invoke this
provision against the licensee."  Id. at 36.

ODI has standing to enforce the copyright that Mr. Foronda
assigned to it.  The record demonstrates that Mr. Foronda and
ODI intended to transfer ownership of the copyright at the time
it was created and that the later writing memorializes this
agreement.  Mr. Foronda and ODI do not dispute the validity of
the transfer of ownership of the Tree Designs as demonstrated by
the assignment signed by Mr. Foronda stating that he transferred
his interest as the author of the Tree Designs to ODI at the
time of their creation.  This writing is consistent with Mr.
Kassin's deposition testimony that there was "an unspoken
understanding about the prior agreements." (Kassin Dep. II at
23, 33.)  There is no dispute between ODI and Mr. Foronda
regarding his intent to assign all intellectual property rights
in the Tree Designs to ODI.  Accordingly, the defendants'
argument that ODI lacks standing is without merit.

**ii.**

Although ODI has standing to assert its claim for copyright infringement, there remain questions of fact as to the validity of the copyright that the Court cannot resolve on a motion for summary judgment.  The plaintiff bears the burden of proving that it owns a valid copyright, which the defendants have infringed.  See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 108-09 (2d Cir. 2001).  Ordinarily, a copyright registration is presumed valid and it is the alleged infringer who bears the burden of proving invalidity of the registration.  See Hamil Am. Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999); see also 17 U.S.C. § 410(c).

The defendants argue that ODI's copyright is invalid because the copyright registration form does not contain the author's name and erroneously lists the works as works made for hire.  However, in Wales Industrial Inc. v. Hasbro Bradley, Inc., 612 F. Supp. 510, 514-15 (S.D.N.Y. 1985) (Weinfeld, J.), the Court held that

> [Where a corporation which had been assigned limited rights in a copyright] erroneously identified itself [and not the assignor] as the 'copyright claimant' . . . th[e] alleged error would not invalidate the registrations. . . .  Since there [was] no indication that the claimed error was committed knowingly, and since identification of the copyright claimant . . . would not have occasioned rejection of the applications by the Copyright Office, the alleged error would not require dismissal of [the] infringement claims.

Id., overruled on other grounds by Hasbro Bradley, Inc. v.
Sparkle Toys, Inc., 780 F.2d 189, 194 (2d Cir. 1985).  In Wales,
Judge Weinfeld found that "[s]uch error . . . could be readily
corrected by . . . filing supplementary registrations with the
Copyright Office."  Id.; see also Kenbrooke Fabrics, Inc. v. Soho
Fashions, Inc., 690 F. Supp. 298, 302 (S.D.N.Y. 1988).

    The defendants cite Muench Photography v. Houghton Miflin
Harcourt, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010), for the
proposition that the innocent error rule, which permits
corrections of technical defects or accidental omissions of
information, does not apply when the author's name is missing
from the copyright registration form.  However, in Muench
Photography, the factual record with regard to the copyright
registration was sufficiently developed to permit granting
summary judgment to the defendants because of the many
deficiencies in the registration form.  712 F. Supp. 2d at 95.
In that case, the Court relied on Morris v. Business Concepts,
Inc., 259 F.3d 65, 72 (2d Cir. 2001) (abrogated by Reed
Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010)), in which
"[t]he registrations contained none of the information required
by § 409 for proper registration of the articles, such as [the
author's] name, the title of her articles, or the proper
copyright claimant . . . [and could not] be viewed as valid
copyright registrations under § 408(a)," in rejecting the

28

innocent error rule.  Muench Photography, Inc., 712 F. Supp. 2d at 95 (quoting Morris, 259 F.3d at 72).

The factual record in this case does not entitle the defendants to summary judgment on this claim.  There is no evidence in the record indicating that the plaintiff knowingly committed errors on the copyright registration form; therefore, the innocent-error rule remains applicable.  See, e.g., Kenbrooke Fabrics, 690 F. Supp. at 302 ("Defendant has offered no evidence that plaintiff's errors on its registration application were 'committed knowingly' other than the conclusory statement quoted above.  There remains the possibility that such errors were in fact innocent.".)

Accordingly, the defendants' motion for summary judgment dismissing Count Four, the plaintiff's claim for copyright infringement, is **denied**.


**D.**

The defendants have moved for summary judgment dismissing Count Eight, ODI's claim for tortious interference with prospective economic advantage.  To state a claim for tortious interference with prospective economic advantage under New York law, the plaintiff must establish four elements: "(1) [that the plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally

interfered with it; (3) the defendant acted solely out of
malice, or used dishonest, unfair, or improper means; and (4)
the defendant's interference caused injury to the relationship."
Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006)
(quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)).

The New York Court of Appeals has explained that "the
defendant's conduct must amount to a crime or an independent
tort.  Conduct that is not criminal or tortious will generally
be . . . insufficiently 'culpable' to create liability for
interference with prospective contracts or other nonbinding
economic relations."  Carvel Corp. v. Noonan, 818 N.E.2d 1100,
1103 (N.Y. 2004).  Where an independent tort has not been
proven, a plaintiff may also state a claim by proving that the
defendant has "engage[d] in conduct for the sole purpose of
inflicting intentional harm on [the] plaintiff[]."  Id.
(internal quotation marks omitted); see also RFP LLC v. SCVNGR,
Inc., 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011).

ODI has offered sufficient evidence to establish that (1)
ODI had a business relationship with FDS; (2) Prestige knew of
this relationship and intentionally interfered with it to secure
FDS's business; and (3) Prestige procured FDS's business through
violations of laws protecting ODI's trademarks and copyrights.
However, no reasonable jury could find that ODI has proffered
sufficient evidence to prove that Prestige's interference caused

injury to the relationship between ODI and FDS.  Therefore, the defendants are entitled to summary judgment on this claim.

The evidence in the record establishes that any wrongful conduct by Prestige that interfered with ODI's business relationship with FDS occurred at the direction of FDS.  FDS split its men's thermal underwear supply evenly between ODI and Prestige from 2006-2008 in order to maintain its supply.  (56.1 Stmt. ¶¶ 10, 40; Dromms Dep. at 18-19.)  The parties do not dispute that any packages that Prestige produced in violation of ODI's copyrights or trademarks were produced at FDS's instruction.  (Counterstmt. ¶¶ 10-11.)  Indeed, ODI contends that FDS instructed Prestige to copy ODI's packages including ODI's trademarks, trade dress, and copyrightable subject matter.  (Counterstmt. ¶ 11.)  Mr. Jacobs of Prestige testified that FDS gave it "product to copy."  (Jacobs Dep. at 77-78.)  Mr. Jacobs further testified that he did not investigate any copyright issue because none was readily apparent and that packages produced by Prestige were subject to final approval from FDS.  (Jacobs Dep. at 78-80.)  Because FDS was ultimately responsible for the alleged wrongful conduct by Prestige, it is frivolous for ODI to claim that Prestige caused an interference with the prospective economic relationship between ODI and FDS.  No reasonable jury could find the causation element.

The plaintiff points to cases where a distributor or manufacturer has been held liable for contributory trademark infringement or contributory copyright infringement. See, e.g., Inwood Labs., Inc. v. Ives Labs., Inc., 465 U.S. 844, 853-54 (1982) (contributory trademark infringement); Power Test Petroleum Distribs., Inc. v. Manhattan & Queens Fuel Corp., 556 F Supp. 392, 394 (E.D.N.Y. 1982) (contributory copyright infringement). But, ODI misses the point. The issue is not whether Prestige committed contributory trademark or copyright infringement, but whether it caused an interference with ODI's prospective economic relations with FDS. There is no evidence that it did. Rather, FDS, who had the economic relationship with ODI, caused Prestige to produce products for FDS's distribution.

Moreover, the parties do not dispute that FDS no longer does business with ODI because of their inability to resolve the tariff dispute. (Counterstmt. ¶ 53; Dromms Dep. at 137.) Therefore, the plaintiff's claim for tortious interference with prospective economic advantage fails because the plaintiff cannot establish that any wrongful conduct by Prestige caused it injury.

Accordingly, the defendants' motion for summary judgment dismissing Count Eight, the tortious interference with prospective economic advantage claim, is **granted.**

32

**E.**

The defendants have moved for summary judgment dismissing Count Five, the plaintiff's claim for unfair competition in violation of New York law.  To succeed on this claim, "the plaintiff must prove (1) either actual confusion or a likelihood of confusion; and (2) bad faith on the part of the defendant." Sly Magazine, LLC v. Weider Publ'ns L.L.C., 529 F. Supp. 2d 425, 442-43 (S.D.N.Y. 2007) aff'd, Sly Magazine, LLC v. Weider Publ'ns L.L.C., 346 F. App'x 721 (2d Cir. 2009) (quoting Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-35 (2d Cir. 1995)); see also Hall v. Bed Bath & Beyond, Inc., Nos. 2011-1165 & 2011-1235, 2013 WL 276080, at *9 (Fed. Cir. Jan. 25, 2013).

The plaintiff has satisfied the first element by offering evidence sufficient to draw the inference that the packages produced by Prestige at FDS's instruction could have been confused with the packages produced by ODI.  However, the defendants contend that the plaintiff has failed to offer any evidence of bad faith.  Under New York law, "the essence of unfair competition is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or

33

to deceive purchasers as to the origin of the goods."
Gameologist Grp., LLC v. Sci. Games Int'l, Inc., 838 F. Supp. 2d
141, 165 (S.D.N.Y. 2011) aff'd, 11-4535-CV, 2013 WL 276078 (2d
Cir. Jan. 25, 2013) (alterations and citations omitted); see
also Jeffrey Milstein, Inc., 58 F.3d at 34-35; Capitol Records,
Inc. v. Naxos of Am., Inc., 830 N.E.2d 250, 266 (N.Y. 2005)
(finding that unfair competition under New York law "requires
competition in the marketplace or similar actions designed for
commercial benefit . . . or deception of the public" (internal
citations omitted)).

The plaintiff has offered sufficient evidence to withstand
a motion for summary judgment with regard to FDS, but
insufficient evidence to maintain this claim against Prestige.
There is no evidence that Prestige copied ODI's packaging with
the intent to deprive ODI of FDS's business or to deceive the
public.  Rather, the evidence demonstrates that FDS instructed
Prestige to produce packaging, which Prestige produced as
instructed.  That the packaging was identical to ODI's packaging
is solely attributable to FDS, not to Prestige.  By offering
evidence that FDS instructed Prestige to copy ODI's packaging,
ODI has made a sufficient showing of bad faith against FDS to
survive this motion for summary judgment.  FDS knew or should
have known that ODI claimed intellectual property rights in its
packaging and that the production of packaging very similar to

ODI's would likely cause confusion as to the origin of the packaging.

Accordingly, the defendants' motion for summary judgment is **granted** as to Prestige and **denied** as to FDS with respect to Count Five.

### IV.

FDS has moved for summary judgment on its breach of contract counterclaim against ODI.  FDS argues that ODI breached its contract with FDS when it failed to provide documents sufficient to satisfy Customs that it had improperly assessed a tariff against FDS.  The defendants are not entitled to summary judgment granting this counterclaim because there are genuine issues of material fact as to whether FDS is entitled to recover from ODI on this counterclaim.

A breach of contract claim under New York law requires: (i) the existence of a contract; (ii) performance by the party seeking recovery; (iii) nonperformance by the other party; and (iv) damages attributable to the breach.  Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 402 (S.D.N.Y. 2012) (quoting IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 402 (S.D.N.Y. 2009)).  Although the first two elements of a breach of contract claim are undisputed, genuine issues of material remain regarding whether the AVRS obligated ODI to

reimburse FDS for the tariff, whether ODI failed to perform its contract obligations by not producing documents requested by Customs, and whether FDS's damages are attributable to ODI rather than FedEx.

Under New York law, "the initial interpretation of a contract is a matter of law for the court to decide." K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)). "Whether a contract is ambiguous is a question of law." Curry Rd. Ltd. v. K Mart Corp., 893 F.2d 509, 511 (2d Cir. 1990). However, the Court should construe a contract as a matter of law only if the contract is unambiguous on its face. See Metro. Life Ins. Co. v. RJR Nabisco Inc., 906 F.2d 884, 889 (2d Cir. 1990). A contract is unambiguous if it "has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978)) (alteration in original and internal quotation marks omitted). Where the contractual language is subject to more than one reasonable meaning and where extrinsic evidence of the parties' intent exists, the question of the proper interpretation should

be submitted to the trier of fact, unless the extrinsic evidence is so one-sided that no reasonable jury could find in favor of the non-moving party.  See 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 746 (2d Cir. 1999) (quoting Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev., 768 F.2d 5, 8 (1st Cir. 1985)); Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993); Abner, Herrman & Brock, Inc. v. Great N. Ins. Co., 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004); see also Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 502 (S.D.N.Y. 2007).

In this case, the AVRS is ambiguous with regard to whether the factory or ODI is liable for any "applicable duties, expenses, etc. resulting from Customs examination resulting in a nondesignation as a [QIZ]." (See Lewis Decl., Ex. V at FD 0002444.)  ODI contends that the factory is responsible under the AVRS, whereas FDS contends that the factory was the agent of ODI and that ODI is responsible for any duties assessed by Customs.  The e-mails between the parties do not resolve this ambiguity because they demonstrate that FDS sought payment from both the factory and ODI and that ODI consistently disclaimed responsibility instructing FDS to seek repayment from the factory. (See Kassin Decl., Ex. J at FD 0003624; Lewis Decl., Ex. V at FD 0002417-18.)

Moreover, a question of fact remains regarding whether ODI failed to perform adequately under the AVRS.  ODI contends that it produced all the documents that the AVRS obligated it to produce, whereas FDS contends that ODI supplied faulty documentation to Customs, which caused Customs to reject FDS's claim for full reimbursement.  Neither party has identified or provided any flawed documentation.  Therefore, these questions cannot be resolved on the current record.

It is also unclear from the record that FDS's damages are attributable to a breach by ODI.  ODI claims that the refusal of FedEx to file the remaining protest caused Customs to reimburse only partially the duties imposed on FDS.  ODI has produced e-mails from FDS employees stating that FedEx refused to file the remaining claim on FDS's behalf.  These documents raise a genuine issue of material fact with respect to whether FDS's alleged loss was caused by any breach by ODI, which is an essential element of a breach of contract claim under New York law.

Accordingly, FDS's motion for summary judgment on the counterclaim for breach of contract is **denied**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, they are either moot or without merit.  The Defendants' Joint Motion for Partial Summary Judgment is **granted in part and denied in part**.  The Clerk is directed to **close Docket No. 71**.

**SO ORDERED.**
**Dated:**   **New York, New York**
        **March 13, 2013**          _____/s/_____
                                **John G. Koeltl**
                        **United States District Judge**